## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| HEMATITE HOLDINGS INC., *et al.*,[1] | Case No. 20-12387 (__) |
| Debtors in a Foreign Proceeding. | Joint Administrated Requested |

### VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

Hematite Holdings Inc. ("Hematite Holdings"), in its capacity as the Canadian Court-appointed and authorized foreign representative (the "Foreign Representative") for the above captioned debtors (the "Debtors"), which are the subjects of a reorganization proceeding (the "CCAA Proceeding") commenced under Canada's *Companies' Creditors Arrangement Act* (the "CCAA"), pending before the Ontario Superior Court Of Justice (Commercial List) in Ontario, Canada (the "Canadian Court"), filed chapter 15 petitions for each of the Debtors (the chapter 15 petitions, together with this Verified Petition, the "Petitions for Recognition"), and respectfully states as follows:

### RELIEF REQUESTED

1.      The Foreign Representative has commenced these chapter 15 cases as ancillary proceedings to the CCAA Proceeding and respectfully files this Verified Petition

---

[1]      The U.S. Debtors in these chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers are as follows: Pavaco Holdings U.S. Inc. (5569); Hematite, Inc. (3799); and Hematite Automotive Products Inc. (5382).  The Canadian Debtors in these chapter 15 cases and the last four digits of their unique identifier are as follows: Hematite Holdings Inc. (8581); Hematite Manufacturing Inc. (4900); Hematite Industrial Products Inc. (7706); and Canadian Pavaco Inc. (5315).  The U.S. Debtors and the Canadian Debtors are referred to herein, collectively, as the "Debtors."  The Debtors' principal offices are located at 659 Speedvale Avenue West, Guelph, Ontario, N1K 1E6, Canada.

contemporaneously with the required accompanying documentation pursuant to sections 1504 and

1515 of title 11 of the United States Code (the "Bankruptcy Code").

2.      The Foreign Representative requests that this Court enter an order, substantially in

the form of the Proposed Order attached hereto as **Exhibit A**, pursuant to sections 105(a), 362,

363, 364(e), 365(e), 1504, 1507, 1509, 1510, 1515, 1517, 1520, and 1521 of the Bankruptcy Code

that (collectively, the "Relief Requested"):

> (a)    recognizes the CCAA Proceeding as a foreign main proceeding (as defined in section 1502(4) of the Bankruptcy Code), or in the alternative as a foreign nonmain proceeding (as defined in section 1502(5) of the Bankruptcy Code);
>
> (b)    recognizes the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the CCAA Proceeding;
>
> (c)    gives full force and effect in the United States to the Initial Order (defined below) and Amended Initial Order (defined below) (as applicable), including any and all extensions or amendments thereof authorized by the Canadian Court on a final basis;
>
> (d)    grants the Debtors all of the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, which shall apply with respect to the Debtors and the Debtors' property that is now or in the future located within the territorial jurisdiction of the United States;
>
> (e)    grants further additional relief as authorized by section 1521 of the Bankruptcy Code (or section 1507 as the Court deems necessary), including extending on a final basis the provisional relief requested in the Provisional Relief Motion (as defined herein); and
>
> (f)    provides such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012.  Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

4.      The Foreign Representative, in its capacity as authorized foreign representative, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      These Chapter 15 Cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Petitions for Recognition of the CCAA Proceeding in accordance with section 1515 of the Bankruptcy Code.

6.      Venue in this district is proper pursuant to section 28 U.S.C. § 1410.

## BACKGROUND

7.      Hematite Holdings, along with its affiliated companies in Canada and the U.S. (collectively, "Hematite"), is primarily a tier 1 supplier of component parts to the automotive manufacturing industry and counts Toyota, Fiat Chrysler Automobiles ("FCA") and Ford among its major customers.  *See* Nadeau Decl., ¶ 7.  Hematite has operated in Canada since 1978, and currently operates in Canada from facilities in Brantford and Guelph, Ontario, where it maintains its headquarters. *Id.*

8.      On September 18, 2020, the Debtors filed petitions under the CCAA to a commence restructuring proceeding under the supervision of the Canadian Court.  That same day, the Canadian Court entered an initial order (the "Initial Order")[2] appointing KPMG Inc. ("KPMG," or the "Monitor") to monitor and assist the Debtors in their business and financial affairs in

---

[2] A copy of the Initial Order is attached to the Nadeau Declaration (as defined below) as Exhibit 1.

accordance with section 23 of the CCAA.  The Canadian Court also appointed the Foreign

Representative to assist the Debtors pursuant to paragraphs 48-49 of the Initial Order.  *See* Nadeau

Decl., ¶ 3, Exhibit 1.  The Debtors further anticipate that the Canadian Court will enter an amended

and restated Initial Order (the "Amended Initial Order") on or around September 28, 2020.

9.       A description of the relief provided in the Initial Order is set forth below and in the

*Motion of Hematite Holdings Inc., as Foreign Representative, for an Order Granting Certain*

*Provisional Relief* (the "Provisional Relief Motion") filed contemporaneously herewith.

10.      On the date hereof, the Foreign Representative filed the Petitions for Recognition

under chapter 15 of the Bankruptcy Code for recognition of the CCAA Proceeding, thereby

commencing the Debtors' chapter 15 cases.

11.      Additional information about the Debtors' business and operations, the events

leading up to the filing of the Petitions for Recognition, and the facts and circumstances

surrounding the CCAA Proceeding and these Chapter 15 Cases are set forth in the

contemporaneously filed *Declaration of Jacques Nadeau in Support of the Debtors' Chapter 15*

*Petitions and First Day Pleadings in Foreign Proceeding* (the "Nadeau Declaration"), attached

hereto as **Exhibit B**.  The Nadeau Declaration is incorporated herein by reference.

## BASES FOR RELIEF REQUESTED

12.      The Relief Requested is based on the provisions of chapter 15 of the Bankruptcy

Code.  The purpose of chapter 15 is to "incorporate the Model Law on Cross-Border Insolvency

(the "Model Law") so as to provide effective mechanisms for dealing with cases of cross-border

insolvency."  11 U.S.C. § 1501(a).  In interpreting chapter 15, a court is to "consider its

international origin, and the need to promote an application of [chapter 15] that is consistent with

the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508.

13.     Consistent with these principles, as provided in the Nadeau Declaration, the Foreign Representative commenced these Chapter 15 Cases as ancillary proceedings to obtain recognition of the CCAA Proceeding with the ultimate goal of giving effect in the United States to the Debtors' Canadian restructuring.  Pursuant to this goal, the Foreign Representative intends to ultimately seek recognition from this Court consistent with principles of comity to give effect to an order from the Canadian Court sanctioning a plan of reorganization.

14.     In the interim, as further set forth in the Provisional Relief Motion, the Foreign Representative seeks recognition of the Initial Order to, among other things (i) authorize the Debtors to enter into and grant liens and other lender protections with respect to a financing arrangement to provide the Debtors with necessary liquidity to continue operations (the "Interim DIP Financing"), (ii) provide a stay with respect to the Debtors' and their directors and officers, including to ensure that no dissident creditors can bypass the CCAA Proceeding by commencing litigation or taking other actions in the United States to obtain a greater recovery than other, similarly situated, creditors, and (iii) provide a limited charge to the directors and officers and certain of the Debtors' and the Monitor's professionals in connection with the restructuring.

15.     Further, the Foreign Representative submits that recognition of the CCAA Proceeding will not undermine the rights of U.S. creditors.  All creditors of the Debtors, including any in the United States, will have the opportunity to assert their claims or rights in the CCAA Proceeding and are sufficiently protected as they are expected to receive substantially similar treatment under the CCAA Proceeding as they would in bankruptcy proceedings in the United States.  The Chapter 15 Cases will also provide U.S. creditors notice and time to assert their rights in the CCAA Proceeding.

A. **Recognition of the CCAA Proceeding as a Foreign Main Proceeding and Hematite Holdings as Its Foreign Representative Is Appropriate**

16.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code.  As explained below, the CCAA Proceeding, the Foreign Representative and the Petitions for Recognition satisfy all of the foregoing requirements.

(i)     *The CCAA Proceeding is a Foreign Main Proceeding or in the Alternative a Foreign Nonmain Proceeding*

17.     The CCAA Proceeding is a foreign main proceeding and, as such, satisfy the first condition for the entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.

(a)     *The CCAA Proceeding is a "foreign proceeding"*

18.     As an initial matter, the CCAA Proceeding comes within the general definition of a "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code, which states as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

19.     Section 101(23) requires that a "foreign proceeding" (1) be a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (2) pending in a foreign

country, (3) under the supervision of a foreign court and (4) for the purpose of reorganizing or liquidating the assets and affairs of the debtor. *See* 11 U.S.C. § 101(23). The statute defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

20.    The CCAA Proceeding is a foreign proceeding that satisfies the requirements of section 101(23) of the Bankruptcy Code. As set forth in the Nadeau Declaration filed contemporaneously herewith, a proceeding under the CCAA is (1) a voluntary insolvency proceeding, (2) in Canada, (3) that occurs under the supervision of a Canadian court, (4) in which a debtor reorganizes or liquidates its business and distributes value to creditors pursuant to a plan.

21.    In many ways, the CCAA is similar to a case under chapter 11. Absent exceptional circumstances, and subject to oversight by a court-appointed monitor and the consent of the Canadian court, the debtor's management and board of directors remain in place and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, entering into financing arrangements and/or changing corporate structures. Upon the commencement of a CCAA proceeding, the Canadian court appoints a qualified monitor, who functions as an independent observer of the proceedings and the debtor's business and (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company, (iii) notifies the company's creditors and, if applicable, shareholders of any meetings and tabulates votes at these meetings, if held, (iv) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approves the disclaimer of contracts and leases, (vi) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (vii) prepares a report on the plan of arrangement, which is usually included in the mailing of the plan, if one is filed. Consent of the monitor is generally not required for the

debtor to manage its business, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor and/or its creditors.

22.     Upon the commencement of a CCAA proceeding, all actions against the debtor and its assets are stayed, wherever located. The stay is granted for a maximum period of 10 days, but is typically extended where the debtor can show it continues to act with good faith and due diligence. There is no limit on the number or duration of these extensions of the stay. In CCAA proceedings, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the proceedings.

23.     During a CCAA proceeding, a debtor is also able to obtain postpetition financing (*i.e.*, DIP financing), subject to a hearing and court approval, after showing that the proposed financing is in the best interests of its estate. Such borrowings would typically have priority status in the CCAA proceeding, and, if unsecured financing is unavailable, the debtor is permitted to borrow on a secured basis. The Canadian Court may also approve priority charges against the company's assets, which take priority over existing secured creditors, where notice of the charge approval hearing is given to the potentially affected creditors and the court is of the opinion that such charges are necessary in the circumstances.

24.     Given, among other things, the similarities between the CCAA and chapter 11, the Canadian court and monitor's significant oversight in CCAA proceedings and creditors' ability to meaningfully participate in such proceedings, U.S. courts have routinely and consistently held that Canadian restructuring proceedings under the CCAA qualify as "foreign proceedings" under section 101(23) of the Bankruptcy Code. *See, e.g., In re The Aldo Group, Inc.*, No. 20-11060

(KBO) (Bankr. D. Del. May 8, 2020); *In re U.S. Steel Canada Inc.*, No. 17-11519 (MG) (Bankr.

S.D.N.Y. June 29, 2017) [Docket No. 12]; *In re Thane Int'l, Inc.*, No. 15-12186 (KG) (Bankr. D.

Del. Dec. 1, 2015) [Docket No 41]; *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr.

D. Del. Dec 2, 2015) [Docket No. 100].

(b)    <em>The CCAA Proceeding is a "foreign main proceeding"</em>

25.    In addition to qualifying as a "foreign proceeding" under section 101(23), the

CCAA Proceeding should be recognized as a "foreign main proceeding," as defined in sections

101(23) and 1502(4) of the Bankruptcy Code.  A foreign proceeding will be recognized as a foreign

main proceeding if "it is pending in the country where the debtor has the center of its main

interests."  11 U.S.C. § 1517(b)(1).  Section 1516 of the Bankruptcy Code establishes a rebuttable

presumption that the debtor's registered office, which in this case is in Guelph, Ontario, is the

debtor's center of main interests ("COMI").  *See* 11 U.S.C. § 1516.  When considering a debtor's

COMI, courts may consider the analogous concept of an entity's "principal place of business" or

"nerve center."  *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127,

132 n.10 (2d Cir. 2013).  As such, courts will look to factors such as the location of the debtor's

headquarters, the location of those who actually manage the debtor, and the location of the debtor's

primary assets, among other things, to determine the foreign debtor's COMI.  *Id.* at 130.

26.    The above factors conclusively support a finding that the Debtors' COMI is

Canada.  The Debtors' headquarters is located in Guelph, Ontario, Canada (the "Head Office").

All corporate-level decision-making and corporate administrative functions affecting the Debtors

were centralized at the Head Office in Guelph, Ontario and the Debtors' management team is

located in Guelph, Ontario.  Specifically, all accounting functions, strategic decision-making,

communication functions, marketing and pricing decisions, new business development initiatives,

negotiations of material contracts and leases, acquisition of equipment, and other key functions

9

were coordinated and/or managed from the Head Office in Guelph, Ontario.  Prior to recent workforce reductions, nearly two-thirds of the Debtors' employees were located at the Head Office or in other locations in Ontario, Canada.  As such, the CCAA Proceeding constitutes a foreign main proceeding.

27.    For all of the reasons set forth above, the CCAA Proceeding is, and should be recognized as, a foreign main proceeding.

> (c)    *In the Alternative, the CCAA Proceeding of the Non-Canadian Debtors Should Be Recognized as a Foreign Nonmain Proceeding*

28.    In the alternative, this Court should (i) grant the CCAA Proceeding as a foreign main proceeding with respect to Debtors Hematite Holdings, Hematite Manufacturing Inc., Hematite Industrial Products Inc. and Canadian Pavaco Inc. (the "Canadian Debtors"), as they are incorporated and have their "nerve center" in Canada, and (ii) grant the CCAA Proceeding recognition as a foreign nonmain proceeding with respect to the U.S. incorporated Debtors Pavaco Holdings U.S. Inc., Hematite, Inc., and Hematite Automotive Products Inc.  (the "Non-Canadian Debtors").  Other courts have granted dual recognition to a foreign proceeding as a main and nonmain proceeding, applying the separate forms of recognition to distinct groups of debtors that are parties to a single foreign proceeding.  *See, e.g., In re Mega Brands Inc*., No. 10-10485 (CSS) (Bankr. D. Del. Mar. 23, 2010) [Docket No.  39]; *In re Rock Well Petroleum (U.S.), Inc.*, No. 08-20797 (Bankr. D. Wyo. Feb. 27, 2009) [Docket No. 106].

29.    Pursuant to the Bankruptcy Code, a "foreign nonmain proceeding" is defined as a "foreign proceeding" pending in a country where the debtor has an "establishment" within the meaning of section 1502.  11 U.S.C. § 1517(b)(2).  "Establishment" is broadly defined in the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  As described above, the Non-Canadian Debtors are

operationally and functionally integrated with the Canadian Debtors.  Among other things, as discussed above, all the Debtors are organized under centralized senior management and utilize cash management and accounting functions whose nerve center resides in Canada.  Given that the center of main interests of the Canadian Debtors is undoubtedly in Canada, and given the relationship among all the Non-Canadian Debtors and the Canadian Debtors, each Non- Canadian Debtor clearly has an "establishment" in Canada within the meaning of Bankruptcy Code section 1502(2).

      (ii)    *The Petitions for Recognition Meet the Requirements of Section 1515*

30.    The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).

31.    Here, all of the requirements of section 1515 of the Bankruptcy Code have been met.  First, the Debtors' Chapter 15 Cases were duly and properly commenced by the Foreign Representative through the filing of these Petitions for Recognition as required by section 1515(a) of the Bankruptcy Code.

32.    Second, pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition must be accompanied by one of the following:

    (a)    a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

    (b)    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

    (c)    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

33.     Section 1515(b) of the Bankruptcy Code is satisfied.  Attached to the Nadeau Declaration as Exhibit 1 and incorporated by reference herein, is a true and correct copy of the Initial Order.

34.     Third, in accordance with section 1515(c) of the Bankruptcy Code, the Petitions for Recognition contain a statement identifying the CCAA Proceeding as the only foreign proceeding currently pending with respect to each of the Debtors.  Accordingly, the Petitions for Recognition meet the requirements of section 1515 of the Bankruptcy Code in satisfaction of the third requirement under section 1517(a) of the Bankruptcy Code.

35.     For the foregoing reasons, the Foreign Representative respectfully submits that all of the requirements of section 1517(a) have been satisfied and, thus, that the entry of an order recognizing the CCAA Proceeding as a foreign main proceeding (or, alternatively as to the Non-Canadian Debtors, as a foreign nonmain proceeding) is proper.

**B.     The Debtor Is Entitled to the Automatic Relief Under 11 U.S.C. § 1520**

36.     Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign proceeding as a foreign main proceeding, *see* 11 U.S.C. § 1520(a), including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and to the Debtor's property that is within the territorial jurisdiction of the United States.  Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Foreign Representative respectfully submits that no further showing is required to the extent the Court recognizes the CCAA Proceeding as a foreign main proceeding.

37.     Alternatively, to the extent Court determines to grant the CCAA Proceeding recognition (i) as a foreign main proceeding with respect to the Canadian Debtors and (ii) as a foreign nonmain proceeding with respect to the Non-Canadian Debtors, the Non-Canadian Debtors

hereby request that the protections afforded by the automatic stay under section 362(a) of the Bankruptcy Code be extended to the Non-Canadian Debtors and their property within the territorial jurisdiction of the United States pursuant to section 1521 of the Bankruptcy Code.  Such relief is necessary and appropriate to protect the assets of the Non-Canadian Debtors, which serve critical roles in the Debtors' structure.  Further, the Non-Canadian Debtors' creditors would be sufficiently protected because they can avail themselves of the CCAA Proceeding to assert any and all rights.

C.    **The Discretionary Relief Requested Is Necessary and Appropriate to Effect the Restructuring and Should Be Granted**

38.    Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a).  Such relief may include, among other things, "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. §1521(a)(7).  The Court may grant relief under section 1521(a) if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

39.    For the reasons that follow and as set forth in the Provisional Relief Motion, incorporated herein by reference, the Foreign Representative asks this Court to exercise its discretion under section 1521(a) to extend on a final basis the following additional relief sought in the Provisional Relief Motion, including:

(a)    recognizing and enforcing in the United States, on a provisional basis, the Initial Order that, among other things:

i.    authorizes the Debtors to enter into, perform and borrow, as an initial draw, up to CDN $2,300,000 under that certain interim facility (the "Interim DIP Facility");

ii.      grants the Interim DIP Lender a priority charge on the Debtors' property (the "<u>Interim DIP Lender Charge</u>") as security for all obligations to the Interim DIP Lender under the Interim DIP Facility;

iii.     grants the Debtors' directors and officers a charge against the Debtors' property for an aggregate amount of CDN $300,000 (the "<u>Directors' Charge</u>") as security for the Debtors' indemnification obligations owed to the Debtors' directors and officers in their capacity as such; and

iv.     grants the Monitor, the Monitor's legal counsel, the Debtors' (including the Foreign Representatives') legal counsel and the Monitor and Debtors' respective advisors a charge against the Debtors' property for an aggregate amount of CDN $250,000 (the "<u>Administration Charge</u>," and together with the Directors' Charge and the Interim DIP Lender Charge, the "<u>CCAA Charges</u>") as security for the professional fees and expenses incurred in connection with the CCAA Proceeding and Chapter 15 Cases.

(b)     granting, on a provisional basis, to and for the benefit of the Interim DIP Lender, certain protections afforded by the Bankruptcy Code, including those protections provided by section 364(e) of the Bankruptcy Code; and

(c)     applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on a provisional basis, pursuant to sections 105(a), 1519(a) and 1521(a)(7) of the Bankruptcy Code.

40.     As mentioned above, the Debtors anticipate the Amended Initial Order will supersede the Initial Order and be entered by the Canadian Court prior to this Court's hearing on the Petitions for Recognition.

41.     As further explained in the Provisional Relief Motion, the Interim DIP Lender has agreed to provide the Interim DIP Facility upon the terms outlined in the DIP Loan Agreement (as defined in the Nadeau Declaration and attached thereto as Exhibit 4). The Foreign Representative understands that the terms of the Interim DIP Facility were negotiated, proposed and entered into without collusion, in good faith and at arm's length. The Debtors will require access to a portion of the Interim DIP Facility to fund, among other things, working capital requirements, other general corporate expenditures and the costs of administering their bankruptcy cases. As discussed

in the Nadeau Declaration, the Debtors expect to run out of cash to continue operations in the week ending September 25, 2020, and potentially earlier, unless additional, immediate funding is provided through the Interim DIP Facility.  The funding provided by the Interim DIP Facility is therefore necessary to give vendors, employees and other critical parties who deal with the Debtors confidence that the Debtors have access to funds to meet their post-filing obligations to such parties.  Nadeau Declaration, ¶ 29.  The Interim DIP Facility will preserve and maintain the going concern value of the Debtors' estates, which, in turn, is integral to maximizing value.

42.    As explained in the Provisional Relief Motion, it is vital to the success of the Debtors' restructuring that actions against the Debtors' directors and officers and their assets within the territorial jurisdiction of the United States are enjoined.  The Debtors' directors and officers have indemnification rights and have been granted a Directors' Charge against the Debtors, such that any judgment against them would be a *de facto* judgment against the Debtors and their assets—to the determent of creditors.

43.    As explained in the Provisional Relief Motion, section 365(e) of the Bankruptcy Code prohibits counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing.  The Debtors could face significant harm resulting from the potential termination of critical contracts and leases.  Absent the continued relief requested, counterparties may attempt to terminate these valuable contracts and leases.

44.    Further, the purpose of chapter 15 is carried out by granting recognition of and giving effect in full to the Initial Order as, and to the extent, superseded by the Amended Initial

Order, as it will (a) maximize value of the Debtors' assets, (b) facilitate the fair and efficient cross-border restructuring; and (c) foster cooperation between courts in Canada and the United States.[3]

**D.**     **Relief Sought Herein is Consistent with the Purpose of Chapter 15 and U.S. Public Policy**

45.     Section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the United States.  11 U.S.C. § 1506.  The Foreign Representative submits that the relief requested herein is not manifestly contrary to, and is in fact entirely consistent with, the public policy of the United States.

46.     It is well established that one of the fundamental goals of U.S. bankruptcy proceedings is the centralization of disputes involving the debtor.  S*ee, e.g., Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),* 922 F. 2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estates and its reorganization in the Bankruptcy Court….") (internal quotations and citations omitted); *see also Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1207 (3d. Cir. 1991) ("Consolidating all pre-petition claims against the debtor in one collective proceeding before a bankruptcy court is the essence of bankruptcy."); *In re Irish Bank Resolution Corp. Ltd*., Case No. 13-12159 (CSS), 2014 WL 9953792, at *21 (Bankr. D. Del. Apr. 30, 2014) (emphasizing "recognition of the [foreign] proceeding . . . would support the strong public policy of the United States in favor of a universalism approach to complex multinational bankruptcy proceedings").  Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against

---

[3] To the extent this Court believes section 1507 of the Bankruptcy Code is the appropriate section to grant any relief requested herein, the Foreign Representative requests such relief be granted thereunder.

a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp 1255, 1259 (S.D.N.Y. 1979).

47.     Moreover, the purpose of chapter 15 is set forth in section 1501 and includes:  (i) cooperation between courts of the United States and the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (ii) greater legal certainty for trade and investment; (iii) fair and efficient administration of cross-border insolvencies that protect the interests of all creditors, and other interested entities, including the debtor; (iv) protection and maximization of the value of the debtor's assets; and (v) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.  *See* 11 U.S.C. § 1501.

48.     Recognition of the CCAA Proceeding as a foreign main proceeding will, among other things, facilitate the orderly administration of the Debtors' assets and foster cooperation between courts in Canada and the United States in respect of the Debtors' restructuring.  Such orderly administration is thus consistent with the public policy of the United States and the Bankruptcy Code.

49.     Recognition of the CCAA Proceeding would also promote the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all creditors and interested parties.  By recognizing the CCAA Proceeding and granting the relief requested, the process of resolving claims against the Debtors would be centralized in Canada, from where the Debtors function.  Claims would be treated in accordance with a restructuring plan that comports with Canada's CCAA (which closely resembles a U.S. chapter 11), and any disputes would be subject to the uniform jurisdiction of one tribunal, the Canadian Court.

## **NOTICE**

50.     The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m).  The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions for Recognition and the Foreign Representative's request for entry of the Final Order in the form and manner set forth in the *Motion of Foreign Representative for Order (I) Scheduling Hearing on Verified Petition Under Chapter 15 of The Bankruptcy Code For Recognition of a Foreign Main Proceeding and for Additional Relief and Assistance Under 11 U.S.C. §§105(a), 1507, and 1521 and (II) Specifying Form and Manner of Service of Notice of Hearing*, filed contemporaneously herewith.  The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

WHEREFORE, for the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter an order (i) granting the relief requested herein and (ii) granting the Foreign Representative and the Debtors such other and further relief as the Court deems proper and just.

Dated:  September 22, 2020
       Wilmington, Delaware

WOMBLE BOND DICKINSON (US) LLP

*/s/ Todd A. Atkinson*
Matthew P. Ward (Del. Bar No. 4471)
Morgan L. Patterson (Del. Bar No. 5388)
Todd A. Atkinson (Del. Bar No. 4825)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:    (302) 252-4320
Facsimile:    (302) 252-4330
Email:    matthew.ward@wbd-us.com
        morgan.patterson@wbd-us.com
        todd.atkinson@wbd-us.com

*Counsel for Hematite Holdings Inc.,*
*in its capacity as Foreign Representative*