**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HEMATITE HOLDINGS INC., *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 20-12387 (___)<br><br>Joint Administrated Requested |

**MOTION OF HEMATITE HOLDINGS INC., AS FOREIGN REPRESENTATIVE, FOR AN ORDER GRANTING CERTAIN PROVISIONAL RELIEF**

Hematite Holdings Inc. ("Hematite Holdings"), in its capacity as the Canadian Court-appointed and authorized foreign representative (the "Foreign Representative") for the above-captioned debtors (collectively, the "Debtors") which are the subjects of a reorganization proceeding (the "CCAA Proceeding") commenced before the Ontario Superior Court Of Justice (Commercial List) in Canada (the "Canadian Court") under Canada's *Companies' Creditors Arrangement Act* (the "CCAA"), respectfully moves (the "Motion") as follows:

**RELIEF REQUESTED**

1. Pursuant to sections 105(a), 362, 363, 364, 365(e), 1517, 1519, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), the Foreign Representative respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, providing the following relief (collectively, the "Requested Provisional Relief"):

    a. recognizing and enforcing in the United States, on a provisional basis, the initial order (the "Initial Order") that, among other things:

---

[1] The U.S. Debtors in these chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers are as follows: Pavaco Holdings U.S. Inc. (5569); Hematite, Inc. (3799); and Hematite Automotive Products Inc. (5382). The Canadian Debtors in these chapter 15 cases and the last four digits of their unique identifier are as follows: Hematite Holdings Inc. (8581); Hematite Manufacturing Inc. (4900); Hematite Industrial Products Inc. (7706); and Canadian Pavaco Inc. (5315). The U.S. Debtors and the Canadian Debtors are referred to herein, collectively, as the "Debtors." The Debtors' principal offices are located at 659 Speedvale Avenue West, Guelph, Ontario, N1K 1E6, Canada.

    (i)    authorizes the Debtors to enter into, perform and borrow, as an initial draw, up to CDN $2,300,000 under that certain interim facility (the "Interim DIP Facility");

    (ii)    grants the Interim DIP Lender a charge against the Debtors' property (the "Interim DIP Lender Charge") as security for all obligations to the Interim DIP Lender under the Interim DIP Facility;

    (iii)    grants the Debtors' directors and officers a charge against the Debtors' property for an aggregate amount of CDN $300,000 (the "Directors' Charge") as security for the Debtors' indemnification obligations owed to the Debtors' directors and officers in their capacity as such;

    (iv)    imposes a stay with respect to claims or actions against the Debtors' directors and officers or their assets in connection with the directors' or officers' position at the Debtors; and

    (v)    grants the Monitor, the Monitor's legal counsel, the Debtors' (including the Foreign Representatives') legal counsel and the Monitor and Debtors' respective advisors a charge against the Debtors' property for an aggregate amount of CDN $250,000 (the "Administration Charge," and together with the Directors' Charge and the Interim DIP Lender Charge, the "CCAA Charges") as security for the professional fees and expenses incurred in connection with the CCAA Proceeding and Chapter 15 Cases.

    b.    granting, on a provisional basis, to and for the benefit of the Interim DIP Lender, certain protections afforded by the Bankruptcy Code, including those protections provided by section 364(e) of the Bankruptcy Code; and

    c.    applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on a provisional basis, pursuant to sections 105(a), 1519(a) and 1521(a)(7) of the Bankruptcy Code.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider the Motion pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under section 157(b)(2)(P) of title 28 of the United States Code. These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of chapter 15 petitions

(the "Petitions") and the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition," and together with the Petitions, the "Petitions for Recognition") for recognition of the CCAA Proceeding under section 1515 of the Bankruptcy Code.

3. The Foreign Representative, in its capacity as authorized foreign representative, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410.

5. The statutory predicates for the relief requested herein are sections 105, 362, 363, 364, 365(e), 1517, 1519, and 1521 of the Bankruptcy Code.

## BACKGROUND

6. Hematite Holdings, along with its affiliated companies in Canada and the U.S. (collectively, "Hematite"), is primarily a tier 1 supplier of component parts to the automotive manufacturing industry and counts Toyota, Fiat Chrysler Automobiles ("FCA") and Ford among its major customers. *See* Nadeau Decl. ¶ 7. Hematite has operated in Canada since 1978, and currently operates in Canada from facilities in Brantford and Guelph, Ontario, where it maintains its headquarters. *Id.*

7. Additional information about the Debtors' business and operations, the events leading up to the filing of the Petitions for Recognition, and the facts and circumstances surrounding the CCAA Proceeding and the Chapter 15 Cases, is set forth in the contemporaneously filed *Declaration of Jacques Nadeau in Support of the Debtors' Chapter 15 Petitions and First*

3

*Day Pleadings in Foreign Proceeding* (the "Nadeau Declaration"). The Nadeau Declaration is incorporated herein by reference.

8. On September 18, 2020, the Debtors filed applications under the CCAA to commence a restructuring proceeding under the supervision of the Canadian Court. That same day, the Canadian Court entered the Initial Order, a true and correct copy of which is attached hereto as **Exhibit B**, appointing KPMG Inc. ("KPMG," or the "Monitor") to monitor and assist the Debtors in their business and financial affairs in accordance with section 23 of the CCAA. The Canadian Court also appointed the Foreign Representative to assist the Debtors in accordance with paragraphs 48 and 49 of the Initial Order.

9. Among other things, the Initial Order authorizes the Debtors to enter into the interim financing documents to fund the post-filing expenditure of the Debtors (the "Interim DIP Facility") pursuant to the terms of that certain DIP Loan Agreement, dated September 17, 2020 (the "DIP Loan Agreement") between each of the Debtors, as borrowers, and Woodbridge Foam Corporation, as lender (in such capacity, the "Interim DIP Lender"). A copy of the DIP Loan Agreement is attached as Exhibit 4 to the Nadeau Declaration. As set forth in the Interim DIP Facility and as approved by the Initial Order, the Debtors are authorized to incur a portion, CDN $2,300,000, of the Interim DIP Facility. Initial Order, ¶ 29. The Initial Order grants the Interim DIP Lender a charge and security on all of the Debtors' property. The Interim DIP Lender Charge is entitled to priority as set forth in paragraphs 35 and 36 of the Initial Order.

10. The Initial Order also stays the continuation or commencement of actions and proceedings against the Debtors and their directors and officers, including any actions or proceedings that may be brought in these Chapter 15 Cases, to ensure that dissident creditors cannot bypass the CCAA Proceeding by commencing litigation or taking other actions outside of

Canada to obtain a greater recovery than other, similarly situated creditors. Initial Order, ¶10. As further explained below, the Debtors' directors and officers are integral to their restructuring efforts and have rights of indemnification against the Debtors and have been granted by the Canadian Court the Directors' Charge, such that any judgments obtained against the directors and officers would be a *de facto* judgment against the Debtors.

11. On the date hereof, the Foreign Representative filed the Petitions for Recognition under chapter 15 of the Bankruptcy Code for recognition of the CCAA Proceeding, thereby commencing the Debtors' chapter 15 cases.

## BASIS FOR RELIEF

**A.**     ***Section 1519 of the Bankruptcy Code Authorizes the Requested Provisional Relief.***

12. Section 1519 of the Bankruptcy Code authorizes the Court to grant the Foreign Representative certain enumerated relief pending the Court's ruling on the Petitions for Recognition:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including —
>
> (1) staying execution against the debtor's assets;
>
> (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
>
> (3) any relief referred to in paragraph (3), (4) or (7) of section 1521(a).

11 U.S.C. § 1519(a).

13. Section 1519(a)(3) of the Bankruptcy Code expressly authorizes the Court to grant the Foreign Representative any relief referenced in, among others, section 1521(a)(7) of the Bankruptcy Code. Section 1521(a)(7), in turn, permits a court to grant any relief, with certain limited exceptions that are not applicable here, that would be available to a bankruptcy trustee, and therefore authorizes the Court apply sections 105, 362, 363, 364(e) and 365(e) of the Bankruptcy Code to the Chapter 15 Cases on a provisional basis and grant provisional recognition to foreign court orders.

14. Of particular relevance to these Chapter 15 Cases is section 364(e), which provides that a reversal or modification of a financing order does not affect the validity or priority of a post-petition lender's claim or lien. Lenders to foreign debtors in chapter 15 cases are entitled to the protection that their claims and liens retain their validity and priority if a recognition order is not entered. Absent such relief, the incorporation of section 364 into chapter 15 through sections 1519 and 1521(a)(7) would have little effect.

15. Sections 105(a), 1519 and 1521(a)(7) of the Bankruptcy Code also grant the court authority to extend the protections of sections 362 of the Bankruptcy Code not only to the Debtors, but also to their directors and officers, as non-Debtors, in these Chapter 15 Cases. Indeed, courts in this district have extended and applied the automatic stay to non-debtor entities in chapter 11 cases where the relief is necessary to prevent irreparable harm. *In re W.C. Wood Corp., Ltd.*, No. 09-11893 (Bankr. D. Del. June 1, 2009) [Docket No. 16] (extending stay protection to officers and directors); *In re Fraser Papers Inc.*, No 09-12123 (Bankr. D. Del. June 19, 2009) [Docket No. 18] (same).

B.     *The Requested Provisional Relief Is Justified.*

16.    Provisional relief under section 1519 requires satisfaction of the standard for injunctive relief. 11 U.S.C. § 1519(e); *In re Innua Can. Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D. N.J. Mar. 25, 2009). That same standard applies to a request to extend and apply the automatic stay to a non-debtor entity. In the Third Circuit, that standard requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the injunction is denied; (c) granting provisional relief will not result in even greater harm to the nonmoving party; and (d) the public interest favors such relief. *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted)). The Foreign Representative submits that the standard is satisfied in these Chapter 15 Cases.

               i.     <u>There Is a Substantial Likelihood of Recognition</u>.

17.    As detailed more fully in the Verified Petition and the Nadeau Declaration, there is a substantial likelihood of recognition of the CCAA Proceeding as a foreign main proceeding, or, in the alternative, a foreign nonmain proceeding. The CCAA Proceeding is a "foreign proceeding" and the Foreign Representative is a "foreign representative," as those terms are defined in sections 101(23) and (24) the Bankruptcy Code. In addition, these Chapter 15 Cases were duly and properly commenced by filing the Petitions for Recognition in accordance with section 1515 of the Bankruptcy Code and Rule 7007.1 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). Moreover, the CCAA Proceeding is a foreign main proceeding as defined in section 1502 of the Bankruptcy Code because the Debtors' center of main interests is located in Canada for the reasons set forth in the Verified Petition and Nadeau Declaration. To the extent this Court determines that the CCAA Proceeding (with respect to the Debtors incorporated outside of

Canada) is not recognized as a foreign main proceeding, such CCAA Proceeding is a foreign nonmain proceeding because each such Debtor has an establishment within the meaning of section 1502 of the Bankruptcy Code in Canada.

        ii.        <u>The Debtors Will Suffer Irreparable Harm if the Request for Provisional Relief Is Denied</u>.

18.     Provisional recognition and relief under sections 105(a), 362, 363, 364, 365(e), 1517, 1519, and 1521 of the Bankruptcy Code in these cases is important to prevent irreparable damage to the interests of the Debtors' estates, creditors, and the efficacy of the CCAA Proceeding. The stay in section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law, halting all collection efforts, harassment and foreclosure actions and providing debtors with necessary breathing room from the financial pressures that caused the bankruptcy filing. Section 365(e) of the Bankruptcy Code provides a debtor with similar relief by prohibiting counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing. Although the Initial Order implements a stay preventing parties from taking actions against the Debtors and their assets wherever located, the Debtors have assets in the United States that may be subject to enforcement actions by certain creditors and litigants that may not believe they are bound by the Initial Order.[2] *See In re Daebo Int'l Shipping Co*., 543 B.R. 47, 54 (Bankr. S.D.N.Y. 2015) (holding that "the Court finds that under [Canadian] law the stay order plainly was intended to have worldwide effect . . . . [Canadian] law (and the stay order) are clear, and it is consistent with the purpose of Chapter 15 to give effect to them").

19.     If these protections under sections 362 and 365(e) were unavailable, the Debtors could face immediate and irreparable harm resulting from the potential termination of critical

---

[2] The Foreign Representative and the Debtors reserve all rights and remedies with respect to any party that takes action against the Debtors or their assets inconsistent with the Initial Order and Canadian law.

leases and contracts and the piecemeal loss of assets from individual creditor collection and enforcement efforts. Indeed, the Debtors are parties to numerous critical leases and contracts with U.S. counterparties that may contain provisions granting the counterparty a right to terminate for various reasons, including bankruptcy or insolvency-related defaults. Absent the provisional relief requested, counterparties in the United States may attempt to terminate these valuable leases and contracts, which would undermine the centralized nature and fundamental fairness of the CCAA Proceeding.

20. Courts in this district have recognized the need to provide provisional relief in order to ensure the orderly distribution of a debtor's assets in a single proceeding, and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions. *See, e.g., In re The Aldo Group, Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) [Docket No. 29] (granting provisional relief, including recognition and enforcement of the Initial Order entered in the CCAA Proceeding and application of sections 362, 364(e) and 365(e)); *In re Groupe Dynamite Inc.*, No. 20-12085 (CSS) (Bankr. D. Del. Sept. 9, 2020) [Docket No. 25] (granting provisional relief, including recognition and enforcement of the Initial Order entered in the CCAA Proceeding and application of sections 362 and 365(e)); *In re Unique Broadband Sys. Ltd.*, No. 19-11321 (BLS) (Bankr. D. Del. June 13, 2019) [Docket No. 12]; *In re Kraus Carpet Inc.*, No. 18-12057 (KG) (Bankr. D. Del. Sept. 12, 2018) [Docket No. 17] (granting recognition on a provisional basis); *In re RCR Int'l Inc.*, No. 18-10112 (LSS) (Bankr. D. Del. Jan. 24, 2018) [Docket No. 11] (same); *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30] (same).

21. In addition, the Debtors will suffer immediate and irreparable harm if the Interim DIP Lender refuses to allow the Debtors access to the Interim DIP Facility approved by the Canadian Court because the Interim DIP Lender is not protected pursuant to section 364(e) of the

Bankruptcy Code.  The Debtors require immediate access to a portion of the Interim DIP Facility to fund working capital requirements, other general corporate purposes and the costs of administering their CCAA Proceeding until a final hearing can be held on the Petitions for Recognition.  With the assistance of KPMG, the Debtors have prepared projections that provide the projected cash flow for the Debtors on a weekly basis following entry of the Initial Order.  As discussed in the Nadeau Declaration, the Debtors expect to run out of cash to continue operations in the week ending September 25, 2020, and potentially earlier, unless additional, immediate funding is provided through the Interim DIP Facility.  The funding provided by the Interim DIP Facility is therefore necessary to give vendors, employees and other critical parties who deal with the Debtors confidence that the Debtors have access to funds to meet their post-filing obligations to such parties.  *See* Nadeau Declaration, ¶¶ 29-30.  If such requested relief is not granted, the Debtors will ultimately be unable to meet their obligations and maintain the operation of their business.

22. The Interim DIP Lender has agreed to provide the Interim DIP Facility upon the terms outlined in the DIP Loan Agreement.  *See* Nadeau Declaration, ¶¶ 30-31.  The terms of the DIP were negotiated, proposed and entered by the Debtors and the Interim DIP Lender without collusion, in good faith and at arm's length.  *Id.*  The Interim DIP Facility will preserve and maintain the going concern value of the Debtors' estates, which, in turn, is integral to maximizing recoveries for the Debtors' stakeholders.

23. Accordingly, the Foreign Representative requests that the Court, on a provisional basis, recognize the liens, charges and other protections negotiated in the Interim DIP Facility approved by the Canadian Court and afford the Interim DIP Lender the protections available under section 364(e) of the Bankruptcy Code.  Cause exists to grant the requested relief pursuant to

sections 1519 and 1521(a)(7) of the Bankruptcy Code because the Debtors require immediate access to the funds under the Interim DIP Facility and the Interim DIP Lender has requested, and may not make the funds available unless they are afforded these protections, including the protections of section 364(e) of the Bankruptcy Code.

24. Courts in this district have granted similar relief requested in chapter 15 proceedings. *See, e.g., Essar Steel Algoma Inc.*, No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *Arctic Glacier Int'l, Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *In re Catalyst Paper Corp.*, No. 12-10221 (Bankr. D. Del. Feb. 8, 2012) [Docket No. 60]. Absent immediate interim financing relief, the Debtors and their creditors will suffer immediate and irreparable harm.

25. As described more fully in the Nadeau Declaration, the Debtors may face immediate and irreparable harm if the commencement or continuation of actions against the directors and officers and their assets are not enjoined. The directors and officers in question are essential to managing the Debtors' business and ability to implement a successful restructuring. Nadeau Declaration ¶ 28. Further, the Debtors' directors and officers have indemnification rights and have been granted a Directors' Charge against the Debtors, such that any judgment against them would be a *de facto* judgment against the Debtors and their assets—to the determent of creditors.

iii. <u>There Will Be No Harm to Creditors if the Provisional Relief Is Granted</u>.

26. The Debtors' creditors will not be harmed by the requested provisional relief as it will largely preserve the status quo (with certain exceptions aimed at maximizing the value of the Debtors' assets and will enable the Debtors to continue to finance their operations for the short time necessary for the Court to rule on the Petitions for Recognition. In fact, granting the request

for provisional relief will benefit the Debtors' creditors because it will ensure that the value of the Debtors' assets is preserved for the benefit of all interested parties. Indeed, as stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, at 340-42 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6297. Similarly, the legislative history to section 365(e) provides:

> Subsection (e) invalidates <u>ipso factor</u> [sic] or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy. This frequently hampers rehabilitation efforts. If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation.

*Id*. at 348-49, 1978 U.S.C.C.A.N at 6304-05.

27. The Foreign Representative submits that there will be no harm to creditors if the Foreign Representative's request for provisional relief is granted.

    iv. <u>The Public Interest Favors Granting the Provisional Relief</u>.

28. As noted above, the requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Debtors' efforts to pursue and complete a successful restructuring for the benefit of the Debtors' creditors and other stakeholders. *See In re W.R. Grace & Co.*, 475 B.R. 34, 208 (D. Del. 2012) (emphasizing that "[i]n the bankruptcy context, there is a general public policy weighing in favor of affording finality to bankruptcy judgments."); *In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) (stating

"there is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings"); *Grimes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.)*, 280 B.R. 339, 346 (D. Del. 2002) (explaining "[p]ublic policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies"); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) (emphasizing "[i]n the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests") (citations omitted).

29. In addition, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, an express purpose of chapter 15 of the Bankruptcy Code.

> (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of —
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtors' assets; and
>
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

30. For the reasons stated above, courts in this circuit have frequently granted requests for similar provisional relief in chapter 15 cases. *See, e.g., Essar Steel Algoma Inc., et al.*, No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *Arctic Glacier Int'l, Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *In re Angiotech Pharm., Inc.*, No. 11-10269

(Bankr. D. Del. Jan. 31, 2011) [Docket No. 26] (order granting provisional relief, including protections of automatic stay and 365(e)); *In re MAAX Corp.*, No. 08-11443 (Bankr. D. Del. July 14, 2008) [Docket No. 22] (order granting provisional relief, including protections of 365(e)).

## NOTICE

31.  The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m). The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions for Recognition and the Foreign Representative's request for entry of the Final Order in the form and manner set forth in the *Motion of Foreign Representative for Order (I) Scheduling Hearing on Verified Petition Under Chapter 15 of The Bankruptcy Code For Recognition of a Foreign Main Proceeding and for Additional Relief and Assistance Under 11 U.S.C. §§105(a), 1507, and 1521 and (II) Specifying Form and Manner of Service of Notice of Hearing*, filed contemporaneously herewith. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## **CONCLUSION**

WHEREFORE, for all of the reasons stated above, the Foreign Representative respectfully requests that this Court: (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein; and (b) grant such other and further relief as this Court deems just and proper.

Dated: September 22, 2020
Wilmington, Delaware

WOMBLE BOND DICKINSON (US) LLP

*/s/ Todd A. Atkinson*
Matthew P. Ward (Del. Bar No. 4471)
Morgan L. Patterson (Del. Bar No. 5388)
Todd A. Atkinson (Del. Bar No. 4825)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:     (302) 252-4320
Facsimile:      (302) 252-4330
Email:             matthew.ward@wbd-us.com
                      morgan.patterson@wbd-us.com
                      todd.atkinson@wbd-us.com

*Counsel for Hematite Holdings Inc.,*
*in its capacity as Foreign Representative*