# EXHIBIT B

## Amended Initial Order

Court File No. CV-20-00647824-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | MONDAY, THE 28TH |
| | ) | |
| JUSTICE HAINEY | ) | DAY OF SEPTEMBER, 2020 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF HEMATITE HOLDINGS INC., HEMATITE MANUFACTURING INC., HEMATITE INDUSTRIAL PRODUCTS INC., CANADIAN PAVACO INC., PAVACO HOLDINGS U.S. INC., HEMATITE, INC. AND HEMATITE AUTOMOTIVE PRODUCTS INC.**

Applicants

**AMENDED AND RESTATED INITIAL ORDER**

**THIS MOTION**, made by the Applicants pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") for an order amending and restating the initial order (the "**Initial Order**") issued on September 18, 2020 (the "**Initial Filing Date**") was heard this day by judicial videoconference via Zoom in Toronto, Ontario due to the COVID-19 pandemic.

**ON READING** the affidavit of Jacques Nadeau sworn September 17, 2020 and the Exhibits thereto, the affidavit of Jacques Nadeau sworn September 24, 2020 and the Exhibits thereto, the consent of KPMG Inc. ("**KPMG**") to act as the Monitor (in such capacity, the "**Monitor**"), the Pre-Filing Report of KPMG in its capacity as the proposed Monitor, and the First Report of the Monitor dated September 25, 2020; on being advised that the secured creditors of the Applicants who are likely to be affected by the charges created herein were given notice; on hearing the submissions of counsel for the Applicants, the Monitor and those other parties listed on the counsel slip; and on being advised that those parties listed in the affidavit of service, filed, were given notice of the Motion.

## INITIAL ORDER AND INITIAL FILING DATE

1. **THIS COURT ORDERS** that the Initial Order, reflecting the Initial Filing Date, shall be amended and restated as provided for herein.

## SERVICE

2. **THIS COURT ORDERS** that the time for service and filing of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

## APPLICATION

3. **THIS COURT ORDERS AND DECLARES** that the Applicants are companies to which the CCAA applies.

## PLAN OF ARRANGEMENT

4. **THIS COURT ORDERS** that the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**"),

## POSSESSION OF PROPERTY AND OPERATIONS

5. **THIS COURT ORDERS** that the Applicants shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"). Subject to further Order of this Court, the Applicants shall continue to carry on business in a manner consistent with the preservation of their businesses (the "**Business**") and Property. The Applicants are authorized and empowered to continue to retain and employ the employees, contractors, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

6. **THIS COURT ORDERS** that the Applicants shall be entitled to continue to utilize the central cash management system currently in place or, with the consent of the Monitor, replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

7. **THIS COURT ORDERS** that the Applicants shall be entitled but not required to pay the following expenses whether incurred prior to, on or after the Initial Filing Date:

(a) all outstanding and future wages, salaries, employee and pension benefits, vacation pay and expenses (including, without limitation, in respect of expenses charged by employees to corporate credit cards) payable on or after the Initial Filing Date in respect of employees and contractors, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b) the fees and disbursements of any Assistants retained or employed by the Applicants, in respect of these proceedings, at their standard rates and charges; and

(c) with the consent of the Monitor and the DIP Lender (as defined below), amounts owing for goods or services actually supplied to the Applicants prior to the Initial Filing Date by suppliers or other third parties if in the opinion of the Applicants such payment is necessary for the ongoing operations of the Applicants or preservation of the Property, and the payment is required to ensure ongoing supply, up to an aggregate limit of $700,000 for all such payments without further Order of this Court.

8. **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course on or after the Initial Filing Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a) all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b) payment for goods or services actually supplied to the Applicants following the Initial Filing Date (and, in respect of expenses incurred by credit card, the Applicants may provide cash collateral to the credit card issuer with the consent of the Monitor and DIP Lender).

9. **THIS COURT ORDERS** that the Applicants shall remit, in accordance with legal requirements, or pay:

(a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan (iii) Quebec Pension Plan, and (iv) income taxes;

(b) all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the Initial Filing Date, or where such Sales Taxes were accrued or collected prior to the Initial Filing Date but not required to be remitted until on or after the Initial Filing Date; and

(c) any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured

creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

10. **THIS COURT ORDERS** that until a real property lease is disclaimed in accordance with the CCAA, the Applicants shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the Applicants and the landlord from time to time ("**Rent**"), for the period commencing from and including the Initial Filing Date, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including the Initial Filing Date shall also be paid.

11. **THIS COURT ORDERS** that, except as specifically permitted herein, the Applicants are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicants to any of their creditors as of the Initial Filing Date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of their Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business.

**RESTRUCTURING**

12. **THIS COURT ORDERS** that the Applicants shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the plan sponsor agreement between the Applicants and Woodbridge Foam Corporation dated September 17, 2020 and the Definitive Documents (as hereinafter defined) have the right to:

(a) permanently or temporarily cease, downsize or shut down any of the business or operations, and, with the consent of the DIP Lender, to dispose of redundant or non-material assets not exceeding $250,000 in any one transaction or $1,000,000 in the aggregate;

(b) terminate the employment of such employees or temporarily lay off such employees as they deem appropriate; and

(c) pursue all avenues of refinancing the Business or Property in connection with the implementation of the Plan,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13. **THIS COURT ORDERS** that the Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicants, or by further Order of this Court upon application by the Applicants on at least two (2) days notice to such landlord and any such secured creditors. If the Applicants disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

14. **THIS COURT ORDERS** that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

## NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY

15. **THIS COURT ORDERS** that until and including November 27, 2020 or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court

or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

## NO EXERCISE OF RIGHTS OR REMEDIES

16. **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

17. **THIS COURT ORDERS** that, during the Stay Period, all rights and remedies of any Person against or in respect of Hematite R.E. 1, Inc. (the "**Affected Party**") arising out of, relating to, or triggered by the insolvency of any of the Applicants, the making or filing of these proceedings or any allegation, admission or evidence in these proceedings (collectively, the "**Cross-Default Matters**"), are hereby stayed and suspended except with the written consent of the relevant Applicants, the Affected Party and the Monitor, or leave of this Court, and the operation of any provision of any agreement or other arrangement between any Person and the Affected Party whether written or oral that purports to accelerate, terminate, cancel, suspend or modify such agreement or arrangement or create a right to purchase, a right of first refusal or a lien with respect to any property of the Affected Party as a result of any of the Cross-Default Matters is hereby stayed and restrained pending further order of this Court.

## NO INTERFERENCE WITH RIGHTS

18. **THIS COURT ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

## CONTINUATION OF SERVICES

19. **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the Applicants or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Initial Filing Date are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

20. **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Initial Filing Date, nor shall any Person be under any obligation on or after the Initial Filing Date to advance or re-advance any monies or otherwise extend any credit to the Applicants. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

21. **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the Initial Filing Date and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

## DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

22. **THIS COURT ORDERS** that the Applicants shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Applicants after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

23. **THIS COURT ORDERS** that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000 as security for the indemnity provided in paragraph 22 of this Order. The Directors' Charge shall have the priority set out in paragraphs 40 and 42 herein.

24. **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 22 of this Order.

## APPOINTMENT OF MONITOR

25. **THIS COURT ORDERS** that KPMG is hereby appointed as of the Initial Filing Date pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

26. **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a) monitor the Applicants' receipts and disbursements;

(b) report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c) assist the Applicant, to the extent required by the Applicant, in its dissemination, to the DIP Lender and its advisers of financial and other information as agreed to between the Applicant and the DIP Lender which may be used in these proceedings including reporting on a basis to be agreed with the DIP Lender;

(d) advise the Applicants in the preparation of the Applicants' cash flow statements, which information shall be reviewed with the Monitor;

(e) advise the Applicants in their development of the Plan and any amendments to the Plan;

(f) assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' meetings for voting on the Plan;

(g) have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the

Applicants, to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order;

(h) be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(i) perform such other duties as are required by this Order or by this Court from time to time.

27. **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

28. **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

29. **THIS COURT ORDERS** that the Monitor shall provide any creditor of the Applicants and the DIP Lender with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor

shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants is confidential or privileged, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

30. **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

**ADMINISTRATION CHARGE**

31. **THIS COURT ORDERS** that the Monitor, counsel to the Monitor and counsel to the Applicants shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings. The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor and counsel for the Applicants on a bi-weekly basis and, in addition, the Applicants are hereby authorized to pay to the Monitor, counsel to the Monitor and counsel to the Applicants, retainers to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

32. **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

33. **THIS COURT ORDERS** that the Monitor, counsel to the Monitor and counsel to the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000 as security for their professional fees and disbursements incurred at their standard rates and charges, both before and after the making of the Initial Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 40 and 42 hereof.

**DIP FINANCING**

34. **THIS COURT ORDERS** that the Applicants are hereby authorized and empowered to obtain and borrow under a credit facility from Woodbridge Foam Corporation (the "**DIP Lender**") in order to finance the Applicants' working capital requirements and other general corporate purposes and capital expenditures, provided that borrowings under such credit facility shall not exceed $6.0 million unless permitted by further Order of this Court.

35. **THIS COURT ORDERS THAT** such credit facility shall be on the terms and subject to the conditions set forth in the Revolving DIP Loan Agreement between the Applicants and the DIP Lender dated as of September 17, 2020 (the "**DIP Loan Agreement**"), filed.

36. **THIS COURT ORDERS** that the Applicants are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, including the DIP Loan Agreement, the "**Definitive Documents**"), as are contemplated by the DIP Loan Agreement or as may be reasonably required by the DIP Lender pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the DIP Lender under and pursuant to the DIP Loan Agreement and the other Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

37. **THIS COURT ORDERS** that the DIP Lender shall be entitled to the benefit of and is hereby granted a charge (the "**DIP Lender's Charge**") on the Property, which DIP Lender's Charge shall not secure an obligation that exists before the Initial Order was made. The DIP Lender's Charge shall have the priority set out in paragraphs 40 and 42 hereof.

38. **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

(a) the DIP Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lender's Charge or any of the Definitive Documents;

(b) upon the occurrence of an event of default under the Definitive Documents or the DIP Lender's Charge, the DIP Lender, upon three (3) business days' notice to the

Applicants and the Monitor, may exercise any and all of its rights and remedies against the Applicants or the Property under or pursuant to the DIP Loan Agreement, the other Definitive Documents and the DIP Lender's Charge, including without limitation, to cease making advances to the Applicants and set off and/or consolidate any amounts owing by the DIP Lender to the Applicants against the obligations of the Applicants to the DIP Lender under the DIP Loan Agreement, the other Definitive Documents or the DIP Lender's Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of the Applicants; and

(c) the foregoing rights and remedies of the DIP Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Applicants or the Property.

39. **THIS COURT ORDERS AND DECLARES** that the DIP Lender shall be treated as unaffected in any plan of arrangement or compromise filed by the Applicants under the CCAA, or any proposal filed by the Applicants under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under the Definitive Documents.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

40. **THIS COURT ORDERS** that the priorities of the Directors' Charge, the Administration Charge and the DIP Lender's Charge, as among them, shall be as follows:

First – Administration Charge (to the maximum initial amount of $500,000);

Second – DIP Lender's Charge; and

Third – Directors' Charge (to the maximum initial amount of $500,000).

41. **THIS COURT ORDERS** that the filing, registration or perfection of the Directors' Charge, the Administration Charge or the DIP Lender's Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent

to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

42. **THIS COURT ORDERS** that each of the Charges (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, charges, encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person.

43. **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Applicants also obtains the prior written consent of the Monitor, the DIP Lender and the beneficiaries of the Administration Charge and the Directors' Charge, or further Order of this Court.

44. **THIS COURT ORDERS** that the Charges shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a) neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Loan Agreement or the other Definitive Documents shall create or be deemed to constitute a breach by the Applicants of any Agreement to which it is a party;

(b) none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants entering into

the DIP Loan Agreement, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c) the payments made by the Applicants pursuant to this Order, the DIP Loan Agreement or the other Definitive Documents, and the granting of the Charges do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

45. **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicants' interest in such real property leases.

46. **THIS COURT ORDERS AND DECLARES** that this Order is subject to provisional execution and that if any of the provisions of this Order in connection with the DIP Loan Agreement, the other Definitive Documents or the DIP Lender's Charge shall subsequently be stayed, modified, varied, amended, reversed or vacated in whole or in part (collectively, a "**Variation**") whether by subsequent order of this Court, on or pending an appeal from this Order, such Variation shall not in any way impair, limit or lessen the priority, protections, rights or remedies of the DIP Lender whether under this Order (as made prior to the Variation), under the DIP Loan Agreement and the other Definitive Documents, with respect to any advances made prior to the DIP Lender being given notice of the Variation and the DIP Lender shall be entitled to rely on this Order as issued (including, without limitation, the DIP Lender's Charge) for all advances so made.

**SERVICE AND NOTICE**

47. **THIS COURT ORDERS** that the Monitor shall (i) without delay from the Initial Filing Date, publish in the Globe and Mail (National Edition) a notice containing the information prescribed under the CCAA in respect of the Initial Order, (ii) within five days after the Initial Filing Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, or cause to be sent, in the prescribed manner or by electronic message to the e-mail address as last shown on the records of the Applicants, a notice to every known creditor who has a claim against the Applicants of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly

available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

48. **THIS COURT ORDERS** that the Guide Concerning Commercial List E-Service (the "**Guide**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Guide (which can be found on the Commercial List website at https://www.ontariocourts.ca/scj/practice/practice-directions/toronto/eservice-commercial/) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 13 of the Guide, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Guide with the following URL: http://home.kpmg/ca/hematitegroup.

49. **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicants and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery, facsimile or other electronic transmission to the Applicants' creditors or other interested parties and their advisers at their respective addresses as last shown on the records of the Applicants and that any such service or distribution by courier, personal delivery, facsimile or other electronic transmission shall be deemed to be received on day of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

**GENERAL**

50. **THIS COURT ORDERS** that the Applicants or the Monitor may from time to time apply to this Court to amend, vary or supplement this Order or for advice and directions in the discharge of their powers and duties hereunder.

51. **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

52. **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory body or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to Hematite Holdings Inc. in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

53. **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that Hematite Holdings Inc. is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in any other jurisdiction outside Canada, including the United States pursuant to chapter 15 of title 11 of the United States Code.

54. **THIS COURT ORDERS** that this Order and all of its provisions are effective from the date it is made without any need for entry and filing.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO:

SEP 29 2020

PER / PAR:

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF HEMATITE HOLDINGS INC. ET AL.

Court File No: CV-20-00647824-00CL

***ONTARIO*** **SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**AMENDED AND RESTATED INITIAL ORDER**

**McCarthy Tétrault LLP**
Suite 5300, TD Bank Tower
Toronto ON M5K 1E6
Fax: 416-868-0673

**James Gage** LSO#: 34676I
Tel: 416-601-7539
Email: jgage@mccarthy.ca

**Trevor Courtis** LSO#: 67715A
Tel: 416-601-7643
Email: tcourtis@mccarthy.ca